Honorable Ricardo S. Martinez

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CHRISTIE BOWERS, | Case No. C08-1768RSM |
| Plaintiff, | |
| vs. | |
| ROBIN KLETKE and ROBIN COHEN Husband and wife and the marital community Composed thereof, | DECLARATION OF GREGORY P. CAVAGNARO IN OPPOSITION TO DEFENDANT'S MOTION FOR MONETARY SANCTIONS |
| Defendants. | |

Gregory P. Cavagnaro declares as follows:

1. I am attorney of record for Plaintiff in this action, have personal knowledge of the facts contained herein and am competent to testify thereto.

2. Shortly after filing this case Defendant's former counsel, Greg Murphy faxed a Stipulation and Order to extend the time for filing the Defendant's Answer to my office on or about December 12, 2008. I did not view the document until the following day. I then contacted Mr. Murphy and advised him that I was not in a position to stipulate to the extension; however I would not oppose a request to the Court for such an extension. Mr. Murphy advised me that because I had not "immediately responded" to the fax sent to my office, he had already drafted a Motion which

would be filed seeking the extension. This exchange seemed to set the tone of my dealings with Mr. Murphy. Based on the entries in Exhibit B of the Defendant's Declaration in Support of the Motion for Sanctions, Mr. Murphy ended up billing a total of 6.9 hours for a total of $1,782.00 for actions related to obtaining an extension of time to file the Defendant's Answer. The charges, if actually charged to the Defendants by Mr. Murphy are excessive and unreasonable. The basis stated in the Motion for the extension is that there were "constraints" imposed by the upcoming holidays and to allow adequate time to investigate the case. These charges, like so many others allegedly incurred by the Defendants are simply not attributable to my actions. Rather they were incurred by the Defendants based on the overzealous and predatory billing habits and practices of Mr. Murphy. Attached hereto as Exhibit A is a true and correct spreadsheet I prepared which tracks the information contained in Exhibit A and B of the Defendant's Declaration. For example, in the left hand column, I have indicated the date of the time entry and indicate the individual who is billing for their time e.g. GM is Greg Murphy and ACL and LM are Mr. Murphy's paralegal's. The second column indicated the matter worked on based on Exhibit B of Defendant's Declaration. The third column represents the alleged charges. The far right hand columns are my notes. On the first page of the Exhibit, all "A" entries correspond with the Defendant's "A" entries and in this case, relate to the charges surrounding the extension of time to file an Answer. Exhibit A of the Defendant's Declaration does not necessarily correspond with the time entries contained in Exhibit B.

3. Although I am forced to reference information attached to the Defendant's Declaration in support of their motion, I must object to their attached Exhibit A and Exhibit B. The Declaration states that Exhibit A is a true and correct copy of a spread sheet detailing expenses and fees. Who

prepared the spread sheet and why does it have different information than what is contained on Exhibit B? Defendants state that Exhibit B consists of "true and correct copies of time charges incurred by Defendants regarding above referenced expenses". Neither assertion indicates that the information was generated and provided by Mr. Murphy. In fact, Exhibit B seems to be information arising out of a "cut and paste job" and there are obvious alterations of this information, whatever the source. No records have been submitted which have been authenticated by Mr. Murphy. We do not even know if the Defendants have paid the alleged charges, or have any obligation to pay the alleged charges contained in their Exhibits. Based on the above, I object to the admissibility of the Exhibits attached to the Defendant's Declaration under ER 804; ER 602; ER 801 (c) among others.

    4. One of the next exchanges with Mr. Murphy involved the Plaintiff receiving SonoSite documents per Plaintiff's subpoena. Upon receiving the documents from SonoSite, Mr. Murphy's office contacted me and demanded copies of the documents I had received from SonoSite be delivered to him at once. (See Exhibit B entries contained on Exhibit A attached). I advised Mr. Murphy that I would provide him a copy as soon as I had an opportunity to copy the documents. Mr. Murphy did not wait and instead appears to have obtained the documents directly from SonoSite the following day. Why the defendants want to assess charges in connection with their review of the SonoSite documents is perplexing and without merit.

    5. It is true that responses to Interrogatories and Request for Production were not provided to Mr. Murphy as required. It is also true that Mr. Murphy filed two Motions concerning the discovery which were unopposed and not responded to due to lack of the receipt of ECF emails by my office. The alleged charges by Mr. Murphy in connection with the Motions are unreasonable

and outrageous. For example, Defendants allege that Mr. Murphy charged a total of $6,401.00 for the May 6, 2009 Motion to Compel. The Motion was slightly over 2 pages, and was unopposed. However, the time entries leading up to the motion do not substantiate the claim that Mr. Murphy spent all his time leading up to the Motion working on a Motion to compel. (See Exhibit A attached). In fact many of the entries are obviously inflated and do reflect work on a Motion (See Exhibit A attached). Likewise, the July 2nd Motion was similar to the May 6, 2009 Motion, and the 20 hours ($6,538.00) that Mr. Murphy allegedly billed to the Defendants in connection with "drafting" the motion is again unreasonable and excessive.

      6. Mr. Murphy received the Plaintiff's responses to the Defendants Interrogatories on September 11, 2009. However, the responsive documents were not provided to Mr. Murphy. This is because Mr. Murphy's document production requests consisted of requests to Ms. Bowers to produce her tax returns and her personal business records. Additionally, the Defendants were seeking everything in Ms. Bowers possession related to her work as a Dog Agility official. In fact, she is in direct competition with the defendants who are also Dog Agility officials. Ms. Bowers knew that the requests for production were nothing more than a tactic to humiliate and discourage her from continuing with the litigation. Therefore, she resisted producing the documents and did not provide them to the defendants when requested. After further discussions with Ms. Bowers about the need to produce the documents, she relented and provided me with approximately 6 large boxes full of documents. I was overwhelmed by the voluminous amount of documents and alerted Mr. Murphy in a November 5, 2009 letter that we were prepared to bring the documents to his office. See a true and correct copy of the November 5, 2009 letter to Mr. Murphy attached hereto as part of Exhibit B. Mr. Murphy declined to accept the delivery of the documents for inspection.

On November 6, 2009 I sent Mr. Murphy another letter concerning the production of the voluminous documents and inquired about scheduling depositions. A true and correct copy of the November 6, 2009 letter is attached hereto as part of Exhibit B. Pursuant to my discussions with Mr. Murphy, I delivered a full copy set of the documents to Mr. Murphy's office. On November 13, 2009 I again wrote to Mr. Murphy seeking to schedule depositions. Mr. Murphy and I did not schedule depositions. In a December 2009 phone call from Mr. Murphy, we discussed his November 27, 2009 letter. With regard to the tax returns, Ms. Bowers had produced 6 years of returns. I advised Mr. Murphy that she did not have the additional years requested by Mr. Murphy. I also informed Mr. Murphy, consistent with Ms. Bowers responses that she was not in possession of particular emails viewed in secret by the Defendants. I explained to him that although we could identify the time and date of unauthorized access by the defendants, the particular emails contained in Ms. Bowers email in-box were not identifiable. Mr. Murphy did not like my answer or explanation and to this day, the defendants do not accept this fact. Notwithstanding having received full and complete answers and a voluminous amount of documents responsive to the discovery in December of 2009, Mr. Murphy continued to spend an unreasonable amount of time on Motions regarding the Plaintiff's discovery responses. Other than two missing years of tax returns which Ms. Bowers did not have, she had fully and completely responded to the Defendants discovery requests.

7. When Mr. contacted me on December 1, 2009 and asked me if we would enter into Stipulation to Stay discovery, I immediately agreed since we had been discussing the scheduling of depositions. I did in fact enter the stipulation to Stay Discovery and other deadlines related to the case. Even though I was cooperating with Mr. Murphy, it did not stop him from continuing to draft

and file Motions seeking dismissal, sanctions and a variety of other remedies against the plaintiff. I do not understand why Mr. Murphy did not seek to address the situation with me. His allegations of my failure to communicate with him are exaggerated and the time records clearly demonstrate and document several emails and calls between us. However, whenever Mr. Murphy engaged in a brief call or email, his bill would often reflect a substantial billing entry for a much greater duration than the activity would actually take. In later part of December 2009, Mr. Murphy contacted me and advised me that he had not received the documents produced pursuant to RFP No. 1. Although I had inspected the documents prior to them being delivered to Mr. Murphy and was certain he had received them, I had another set hand delivered to Mr. Murphy on December 22, 2009. A true and correct copy of the December 22, 2009 letter which was attached to the second production of documents responsive to RFP No1. is attached as part of Exhibit B hereto.

8. Although the Plaintiff properly and appropriately responded to the Defendants First Set of Admissions in April of 2009, Mr. Murphy continued to behave in his usual overly adversarial and aggressive manner. After carefully reviewing the requests for Admissions with my assistance, Ms. Bowers rightfully denied several Admissions and the rest were admitted. When Mr. Murphy received the responses he took issue with the fact that Ms. Bowers would deny any of his admissions. I advised Mr. Murphy that the denials were appropriate and that we stood behind the responses. As a matter of fact I reviewed them today and find that Ms. Bowers' responses, including the denials are appropriate.

9. Mr. Murphy's December 3, 2009 Motion to Stay Discovery was not based on my actions. On December 1, 2009 I agreed to Stay discovery and extend deadlines relating to experts, so the motion was not based on my actions. When Mr. Murphy contacted me about in late December

2009 about an expert witness he advised me that he had not hired an expert. I advised him that we were going to meet with a potential expert the following week and would inform him when we retained one. At that time, the deadline had not passed for retaining an expert. Instead of asking for an extension of the deadline concerning an expert witness, Mr. Murphy wrote a letter to the Court and asked for a conference which we had. The time spent was not based on my actions or omissions, since I fully disclosed my intentions to Mr. Murphy and was willing and did agree to move back the deadlines with respect to an expert in the case. Both in January and February 2009, Mr. Murphy continued to spend enormous amounts of time drafting motions to sanction the plaintiff, dismiss the case and other relief. He never scheduled or conducted a deposition; filed a Summary Judgment motion; or took other actions to litigate the issues in the case. He was intent on spending both unreasonable and by any standard enormous amounts of time and energy seeking to punish the Plaintiff for her written discovery responses, notwithstanding the fact that the responses were fully provided, with the exception of two years of Plaintiff's tax returns. Mr. Murphy simply didn't like the responses and was hell bent on getting different answers to his questions.

10. I ask the court to carefully review Exhibit A to this Declaration and review the individual time entries allegedly by Mr. Murphy. There are many activities listed on those entries including the review of the file, emails and calls to the Defendants, review of documents and other activates. Yet the defendant clumps the entries together, arbitrarily and then decide how much time Mr. Murphy spent on an activity and provides the "total Charges" on page 2 of Exhibit A attached to Defendant's Declaration. The Court simply cannot rely on the defendant's guess work and should attribute a minimum amount of time for "unnecessary" work by Mr. Murphy which is attributable to my actions. I truly believe that Mr. Murphy engaged in an enormous amount of

unnecessary work, however, I do not believe that much of it had to do with me. Rather, Mr. Murphy was overly aggressive, adversarial and seemed to bill this case unnecessarily most of the time, regardless of whether or not my actions were involved. I take issue with Mr. Murphy's hourly billing rate of $330.00 per hour and believe that it is unreasonably high. We do not have a declaration from Mr. Murphy authenticating this unusually high hourly rate. We do not have evidence from him indicating that $330.00 is his usual and customary hourly rate or what special qualifications he has to charge such an hourly. My own hourly rate is customarily $200.00 per hour. Likewise, Mr. Murphy's legal assistant charges $140.00 per hour. This is also an unusually high hourly rate for an individual who is not an attorney.

    10. The Defendants are seeking the sum of $58,654.00 in alleged charges which they attribute to my actions. Should the court award such a sum, which I believe would be unreasonable, I do not have the financial ability to pay such an amount and do not possess assets sufficient to pay such amount. What ever sum of sanction the court may decide is just and reasonable, I ask that the court allow sufficient time (6 to 9 months) or preferably a payment option so that I can pay such sums and maintain my present monthly obligations. I believe that a sanction in the range of $3,000 to $4,000 is both sufficient and appropriate in this case.

    11.    I want to apologize to the Court, Ms. Bowers and others involved for my failings in this case. Although I believe that Mr. Murphy made this case an intolerable and unnecessarily difficult case to be involved in, I accept full responsibility for my actions and omissions.

Declaration of Gregory P. Cavagnaro
8

LAW OFFICE OF GREGORY P. CAVAGNARO
1400 - 112th Avenue SE #100
Bellevue, Washington 98004
(425) 454-5303

LAW OFFICES OF GREGORY CAVAGNARO

_____
Gregory P. Cavagnaro, WSBA No. 17644
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

1. I hereby certify that on the 28th day of March, 2010 I electronically filed the document listed below with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mark Walters, WSBA 25537
1411 Fourth Avenue, Suite 75
Seattle, WA 98101
mark@walterslawfirm.com

Robin Cohen and Robin Kletke
16820 226th Ave N.E.
Woodinville, WA 98077
robinkletke@hotmail.com

## DOCUMENTS FILED

1. Declaration of Gregory P. Cavagnaro In Opposition To Monetary Sanctions;

2. Exhibit A and B to the Declaration of Gregory P. Cavagnaro In Opposition To Monetary Sanctions

2. Memorandum of Gregory P. Cavagnaro In Opposition To Defendants Motion For Monetary Sanctions;

LAW OFFICES OF GREGORY CAVAGNARO

_____
Gregory P. Cavagnaro, WSBA No. 17644
Counsel for Plaintiff