# Exhibit A

IN THE DISTRICT COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF PIERCE


CHRISTINE BOWERS,            )
                            )
        Petitioner,          )
                            )        NO. 8Y613439A
        vs.                  )
                            )
ROBIN KLETKE,                )
                            )
        Respondent.          )


VERBATIM TRANSCRIPT OF PROCEEDINGS FROM CD


February 19, 2008


BEFORE THE HONORABLE DAVID KIMMERLY


TRANSCRIBED BY:
PHYLLIS CRAVER LYKKEN, RPR, CCR NO. 2423

```
 1        APPEARANCES:

 2          FOR THE PETITIONER:

 3              MR. JEFFREY E. FOSTER
                Foster Law Offices
 4              Attorneys at Law
                720 Third Avenue, Suite 2010
 5              Seattle, WA  98104
                206.903.1836    206.903.1837 FAX
 6
            FOR THE RESPONDENT:
 7
                MR. KETU SHAH
 8              Ketu Shaw Law Offices
                Attorneys at Law
 9              2135 112th Avenue NE, Suite 250
                Bellevue, WA  98004
10              425.455.7611    425.455.4354 FAX

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Bowers v. Kletke                                        , 2/19/2010

1              THE BAILIFF:  The Honorable David Kimmerly,

2         Judge presiding.

3              THE JUDGE:  Please be seated.

4              THE BAILIFF:  The first matter involves Christie

5         Bowers and Robin -- the first matter involves Christie

6         Bowers and Robin Cohen.  Ms. Cohen and Ms. Bowers are

7         represented by counsel.  Both parties are represented.

8              MR. FOSTER:  Good morning, Your Honor.

9              MR. SHAH:  Good morning, Your Honor.

10             THE JUDGE:  Morning.

11             MR. FOSTER:  This is a married couple, Robin

12        Cohen and Robin Kletke.

13             THE JUDGE:  They both have the same first name?

14             MR. FOSTER:  Yes.

15             THE JUDGE:  Interesting.  Well, in this case Ms.

16        Bowers had requested orders under the anti-harassment

17        statute against each of the Robins, of Cohen and

18        Kletke.  And is it still your request for have such an

19        order?

20             MR. SHAH:  Yes.

21             MR. FOSTER:  Yes, it is, Your Honor.

22             THE JUDGE:  All right.  And I gather from the

23        documentation that has been filed that Ms. Kletke and

24        Mr. Cohen are opposed to this?

25             MR. SHAH:  Correct, Your Honor.

Bowers v. Kletke                                         , 2/19/2010

```
 1              THE JUDGE:  Now, there has been some material
 2       filed just recently.  Have you received copies?
 3              MR. FOSTER:  Yes, Your Honor, we filed those.
 4              THE JUDGE:  Oh.  I'm sorry.
 5              MR. FOSTER:  We did give a copy to counsel, so.
 6              THE JUDGE:  And counsel, you have -- have you
 7       had an opportunity to review this material?
 8              MR. SHAH:  We did, Your Honor, and my
 9       understanding from Mr. Foster is that he submitted
10       some Internet records from March of '07 to November of
11       '07.  He faxed us documents, June of '07 to November
12       of '07 because the March through June dates don't
13       apply to us, so with that understanding, yes.
14              THE JUDGE:  Well, Mr. Foster, it is Ms. Bowers'
15       request, is there anything in addition to what you
16       filed that you wanted to bring to my attention at this
17       time?
18              MR. FOSTER:  Well, Your Honor, I think there is
19       a couple of things.  The first is the kind of material
20       that is being accessed in these e-mails, we have
21       attorney/client privilege documentation, e-mails back
22       and forth between myself and my client.  We also have
23       bank account information, credit card information,
24       just a wide array of information, Your Honor, that the
25       respondents have gained access to.  And the real big
```

Bowers v. Kletke                                    , 2/19/2010

1        question is we don't know what has been done with the

2        material.  We don't know how that material has been

3        used, we don't know what e-mails they have in their

4        possession, what information they have in their

5        possession.

6            We have, we have learned that they have actually

7        forwarded certain e-mails from my client's account to

8        other people, third parties, and really, Your Honor,

9        the big problem with this matter is the question of

10       whether and what has been done with these e-mails and

11       the information that is contained in these e-mails

12       that the respondents have illegally gained access to.

13            THE JUDGE:  Mr. Shah?

14            MR. SHAH:  Thank you, Your Honor.  Just to

15       respond to that specific point, we don't believe that

16       there is enough sufficient information in the

17       pleadings here to establish that my clients ever

18       accessed the e-mail accounts.  These Internet records

19       provide us a lot of numbers and even the declarations

20       from other parties saying that this is their Internet

21       protocol number, the numbers on here, there is several

22       IP addresses on here.  So again, I'm not a computer

23       expert, so I'm not exactly sure how all of this

24       translates into my clients accessing their, her

25       client's, excuse me, Ms. Bowers' account, but let's

Bowers v. Kletke                                    , 2/19/2010

```
1        just assume that that happened.  I don't understand
2        how that arises to the level of harassment.
3            There is, according to the statute, there is no
4        reasonable fear.  This behavior apparently happened,
5        the last time it happened was in November, according
6        to these records.  That is over three or four months
7        ago.  Again, I'm not sure that -- who is the party?  I
8        mean are they saying it is Mr. Kletke or are they
9        saying Ms. Cohen, are they saying one or the other,
10       are they saying both of them?  Where is this access
11       occurring?  I am not sure if that is even established,
12       either, but again, I don't want to get into all of the
13       technicalities, my point is, how is this harassment?
14           According to the statute, you know, does a
15       reasonable person fear that there is some fear of harm
16       occurring to this behavior that occurred three,
17       four months ago?
18           I would also point out that these parties were
19       business associates at least a year, a year and a half
20       ago, and Ms. Bowers had given, Ms. Bowers, excuse me,
21       had given my clients access to her e-mail, had given
22       her password -- their password to her, to them to
23       check her e-mails because she frequently travels out
24       of town.  So --
25           MR. FOSTER:  Your Honor, if I may.
```

Central Court Reporting      800-442-DEPO

Bowers v. Kletke                                              , 2/19/2010

1              MR. SHAH:  I'm not saying that this is, that

2         they have a right to access it now, all I'm saying is

3         that there is a convoluted history of interaction and

4         lawful access to this and how to sort that out in

5         terms of an anti-harassment order doesn't seem to make

6         a lot of sense.

7              It seems to me, and this is what is ongoing, is

8         that they have been contacting my clients' employers

9         developing discovery to decide whether to file a civil

10        lawsuit.  If that is the case, then we will deal with

11        that accordingly.  And my understanding is they have

12        also forwarded this information on to law enforcement

13        agencies and again, if that is the venue that is going

14        to be addressed, we will address that here, then,

15        right now.  In terms of the anti-harassment order, I

16        just don't see how there is harassment, harassing

17        behavior, first of all; secondly, how is that my

18        clients are doing this?

19             THE JUDGE:  All right.  Thank you.  And Mr.

20        Foster?

21             MR. FOSTER:  Your Honor, in response, just a

22        couple of points.  The first is on the harassment

23        side.  This behavior is akin to the respondents going

24        in my client's underwear drawer and not only going

25        through the underwear, but taking it out and showing

Bowers v. Kletke                                    , 2/19/2010

1          it to other people and really causing my client a

2          great deal of emotional harm, a great deal of

3          emotional distress.

4               Secondly, as to whether or not they did do this,

5          counsel admitted to me that they did do it.  He said

6          they did it once before I sent over all of the log

7          records.  Okay?  So whether they did it or not,

8          counsel admitted they did.  Okay?

9               Thirdly, in terms of the timing, the IP

10         addresses that we gained access to and the ones that

11         we were able to pinpoint, yes, they do go back to

12         November.  But we do not know what other IP addresses

13         that they were using.  We are investigating that Mr.

14         Kletke, through his employers, who have separate IP

15         addresses, have gained access to this e-mail account

16         as recently as, who knows?  I mean we just don't know.

17              The evidence we provided the Court is merely the

18         link between the IP addresses that we found and the IP

19         addresses that have logged into Ms. Bowers' e-mail

20         account.  So, you know, Ms. Bowers is here to testify

21         in terms of any emotional harm or distress or anything

22         within the statute that may be of question to Your

23         Honor.

24              THE JUDGE:  Well, perhaps a revelation of my

25         computer ignorance, but an IP address, isn't it

Bowers v. Kletke                                    , 2/19/2010

1      similar to a telephone, if you are having difficulties

2      you change your phone number?

3           MR. FOSTER:  Well, the IP address is the IP

4      address that is associated with the respondent's

5      e-mail address.  So what they were, what they were

6      doing and also to mention, Your Honor, the respondent

7      is a computer programmer.  Okay?  So in addition to

8      the fact that he may have discovered Ms. Bowers'

9      e-mail password, he may have other ways to get in that

10     account, thus the need for the anti-harassment order.

11          You know, it shouldn't be up to my client to

12     police her own e-mail account to determine whether

13     someone is gaining unlawful access.  And I might

14     mention, Your Honor, that it is a crime, it is

15     computer trespass, either in the first or second

16     degree, that we are looking at here in terms of the

17     behavior that we are trying to stop.

18          THE JUDGE:  Understood.  But wouldn't it still

19     be prudent if the person feels that there had been an

20     invasion to simply terminate that address and get a

21     new one?  Presumably.

22          MR. FOSTER:  She has done that, Your Honor.

23          THE JUDGE:  Presumably that cuts that off.

24          MR. FOSTER:  She has done that.  But

25     unfortunately these individuals are in the same line

Bowers v. Kletke                                    , 2/19/2010

```
 1          of business, so it would be, you know, we're asking in

 2          terms of the order, Your Honor, to prohibit them from

 3          gaining access to any e-mail account that my client

 4          may, may obtain, because just because she gets a new

 5          e-mail address, that doesn't mean that they can't get

 6          access to that new e-mail address.

 7              THE JUDGE:  Well, that was just a thought with

 8          regard to stopping such activity, but.

 9              MR. FOSTER:  She has attempted to mitigate, we

10          just fear that it is so easy for the respondents to

11          gain access to the actual address, new e-mail address

12          that this behavior is not going to stop.

13              THE JUDGE:  Mr. Shah?

14              MR. SHAH:  Thank you, Your Honor.  I think that,

15          I think that is complete conjecture.  My client is a

16          computer programmer, but it would be akin to saying do

17          I know anything about bankruptcy law because I'm a

18          lawyer.  I know nothing about bankruptcy law and I

19          would never presume to do that.  It has the same

20          situation.

21              Although my client works, and again, it is only

22          Mr. Kletke, Ms. Cohen doesn't do that, Mr. Kletke

23          works in the computer field but he does not have

24          computer knowledge to access or hack into an account.

25          Further, there has been no showing that there is going
```

Bowers v. Kletke                                              , 2/19/2010

```
 1           to be hacking into their account.

 2               And I think that the Court is right.  The simple

 3           remedy would be to change the password.  And I don't

 4           know if she has or not, but clearly since November,

 5           according to the records that the petitioner has

 6           recorded, nothing has happened since then.  So I don't

 7           know if she has changed the password.  If she has,

 8           then that would presume to show that there has been

 9           no -- there is no problem anymore.  Because there is

10           no showing that there has been hacking going on since

11           November until today, so there has been no showing

12           that there has been hacking going on between March and

13           today and my client actually doesn't have knowledge to

14           do that.

15               MR. FOSTER:  Your Honor, if I may.

16               THE JUDGE:  Uh-huh.

17               MR. FOSTER:  If this was a one-time occurrence,

18           we wouldn't be here.  The fact that you know that this

19           is a systemic course of conduct, this e-mail hacking

20           has gone on over 60 times that we have been able to

21           verify.

22               THE JUDGE:  And that, I take it, are the

23           highlighted entries?

24               MR. FOSTER:  That is correct, Your Honor.

25               THE JUDGE:  Okay.
```

Bowers v. Kletke                                    , 2/19/2010

1           MR. FOSTER:  That is correct.

2           THE JUDGE:  And what is it that tells you, that

3      lays this at Mr. Kletke's desk?

4           MR. FOSTER:  I'm sorry?

5           THE JUDGE:  What tells you that if you find

6      evidence of hacking, what traces it back to Mr.

7      Kletke?

8           MR. FOSTER:  It is through the IP address, Your

9      Honor.  The IP address is linked to the declarations

10     of Britney McNeil as well as Deborah Cooper as well as

11     my client.

12          THE JUDGE:  The other individuals, a couple

13     folks --

14          MR. FOSTER:  Submitted declarations, yes, and

15     the IP address is, if you check the highlighted areas,

16     link the IP addresses on the declarations with the IP

17     addresses in the log files.

18          THE JUDGE:  Do you have anything else?

19          MR. SHAH:  I would just say, Your Honor, that

20     those declarations, it looks to me again, I mean, I'm

21     not a computer expert, but it looks like they were

22     forwarded e-mails, so I don't know how they got to

23     these people.  There is one e-mail that was sent

24     directly to Ms. Bowers, it is included in her

25     declaration.  There is actually a substantive part of

Bowers v. Kletke                                                    , 2/19/2010

1              the e-mail that the subject matter where my client

2              wishes her congratulations for winning some contest,

3              that, it looks like, again, is an e-mail that was sent

4              directly to her.

5                   The other declarations, I don't know how those

6              e-mails got to those people, because there is, it

7              looks like it is forwarded and there is several IP

8              addresses in there.  So, again, this doesn't show any

9              hacking and my client actually has affirmed to me that

10             there is no hacking going on.  So I don't know what,

11             how we get there.

12                  MR. FOSTER:  Your Honor, I would go back to the

13             burden of proof in terms of, you know, the burden of

14             proof necessary to establish an anti-harassment, you

15             know, the order, Your Honor, it is, we have

16             demonstrated a course of conduct, we have demonstrated

17             the pattern of conduct that has occurred dozens of

18             times.  And based on the relationship between these

19             two individuals in terms of the fact that they are

20             business competitors in what they do, we are just

21             concerned, Your Honor, that this is not going to stop

22             and we are in the process of identifying more

23             information, getting more IP addresses that could in

24             fact link other e-mail hacking up after November.

25                  So I just want to reinforce, Your Honor, just

Bowers v. Kletke                                    , 2/19/2010

```
 1          the course of conduct and the pattern that we have

 2          seen here and the fact that we don't know what these

 3          individuals have done with the e-mail information.

 4          Have they used it for unauthorized banking?  I mean,

 5          we just don't know.  And so we need to restrain this

 6          conduct today, Your Honor.

 7               THE JUDGE:  And you also mentioned that possibly

 8          some criminal investigation or further action may go

 9          on on that matter?

10               MR. FOSTER:  Yeah.  I have a case number, Your

11          Honor.

12               MR. SHAH:  In terms of, Your Honor, they are

13          business competitors, I want to again reiterate that

14          there was a civil lawsuit that Ms. Bowers was involved

15          in a few years ago and my clients were witnesses to

16          that lawsuit.  That lawsuit eventually led to a

17          settlement agreement, which Ms. Bowers agreed to not

18          enter into certain businesses, and also a signed

19          agreement that they embezzled some money but that she

20          would repay that.

21               MR. FOSTER:  That is irrelevant.

22               MR. SHAH:  Now, that agreement, that civil

23          dispute that occurred a few years ago has, I think, is

24          the sort of engine that is driving this train.  It's

25          an ongoing dispute.  There, Ms. Bowers tried to reopen
```

Bowers v. Kletke                                          , 2/19/2010

1                the settlement agreement.  That failed.  There is

2                still issues about enforcement of that agreement.

3                Again, I'm not trying to bring that into this case, I

4                just wanted to give the background and stuff.  There

5                is clear understanding that there is an ongoing civil

6                dispute that involves both these parties, not

7                directly, but indirectly.

8                     THE JUDGE:  All right.  What is Ms. Cohen's role

9                in all of this, Ms. Cohen has not been mentioned

10               whatsoever, just Ms. Bowers and Mr. Kletke.

11                    MR. SHAH:  They are just a married couple, Your

12               Honor.  I don't know.

13                    MR. FOSTER:  Your Honor, the e-mail address is,

14               it is our opinion that the e-mail address r2agility@

15               verizon.net (phonetic) is utilized by both Ms. Cohen

16               and Mr. Kletke.  They sign the e-mails at the bottom

17               Robin and Robin, thus the need to restrain both, both

18               parties.  And Your Honor, I think, as counsel alluded

19               to adversarial nature and history between these

20               parties, I think that is definitely the impetus behind

21               this hacking relation, for whatever reason they

22               decided to invade my client's privacy and utilize that

23               information for unknown purposes.

24                    THE JUDGE:  All right.  Well, let's be clear

25               what we are not doing today.  We are not deciding

Bowers v. Kletke                                          , 2/19/2010

1          whether there has been any criminal activity.  There

2          has been allegations and apparently there is some

3          investigation underway as to whether there has been

4          some computer trespass activity taking place.  I don't

5          know and I'm not making any decision about that today.

6          That is a law enforcement and prosecutor bailiwick,

7          not this court under the anti-harassment statute.

8              We are not deciding, either, whether there is

9          any other activity involved in terms of any business

10         deals, business relationships, business competition.

11         Whatever there is, there is.  And whether there is any

12         civil action going to further civil action will result

13         from any of that activity, I have no idea and I'm not

14         making any decision about it.

15             The only question before me is Ms. Bowers's

16         request that Ms. Cohen and Mr. Kletke be directed,

17         under the anti-harassment statute, to have no further

18         contact with her.  And the particulars we are most

19         concerned about is the electronic contact, the e-mail

20         activity penetrating e-mail accounts and by virtue of

21         that penetration apparently having access to business

22         records and banking records.  So that is the only

23         thing I'm addressing.  Is that your understanding?

24             MR. SHAH:  As far as I know, Your Honor, there

25         has been no allegation that my clients have phoned

Bowers v. Kletke                                              , 2/19/2010

```
 1          her, been by her workplace, or any other contact

 2          whatsoever established, and my clients have not had

 3          any contact with her.

 4               THE JUDGE:  All right, counsels, the Court's

 5          decision will be as follows:  For this next six

 6          months, I will direct Ms. Cohen and Mr. Kletke to have

 7          no contact with Ms. Bowers, emphasizing the area that

 8          is of concern, the electronic contact.  Any question

 9          about that?

10               MR. SHAH:  No, Your Honor.  I just want to

11          clarify in terms of contact, as counsel alluded, my

12          clients run a dog show business.

13               THE JUDGE:  Uh-huh.

14               MR. SHAH:  And I don't know if Ms. Bowers

15          intends to attend any of those shows or anything of

16          that sort.  She was, at one time, in that dog show

17          business, or dog show activities.

18               THE JUDGE:  Uh-huh.

19               MR. SHAH:  It would be very detrimental to my

20          clients' business if she were to show up and then all

21          of a sudden they have to, like, shut down and leave,

22          and so forth.  So if it is just electronic contact,

23          that is not a problem at all.  If it is physical

24          contact, it could present some issues if they run into

25          each other at one of these dog shows.
```

Bowers v. Kletke                                          , 2/19/2010

1           MR. FOSTER:  And, Your Honor, we don't have any

2      objections.

3           THE JUDGE:  So the order will be that Ms. Cohen

4      and Mr. Kletke are directed to not have any contact

5      with Petitioner Ms. Bowers and emphasizing that is

6      electronic.  I'm not setting any geographic

7      limitations upon any parties' activities, but just

8      simply trying to concentrate on the world of

9      electronic contact.

10          Ms. Cohen and Ms. Bowers, I need your

11     signatures.

12          MR. SHAH:  Your Honor, may I see the order just

13     before they sign?  Just, I wouldn't try to contact

14     because they are not necessarily contacting Ms. Bowers

15     electronically, what they are doing --

16          THE JUDGE:  Well, you have a --

17          MR. SHAH:  Is they are manipulating --

18          THE JUDGE:  If you have a suggestion on

19     language, now is the time.

20          MR. SHAH:  I did draft an order, Your Honor, if

21     I may present it to you.

22          THE JUDGE:  Please.

23          MR. SHAH:  Now, this includes, this includes the

24     no-contact, but if you see paragraph 2, No. 2 on the

25     second page --

Bowers v. Kletke                                    , 2/19/2010

```
 1              THE JUDGE:  And counsel, have you reviewed?

 2              MR. FOSTER:  I haven't seen it.  Well, this

 3         order is exactly the problem that I had just

 4         articulated, Your Honor, that this is very broad and

 5         would be restricting my clients' businesses, and so --

 6              MR. SHAH:  I think I'm just emphasizing No. 2,

 7         Your Honor, in terms of the verbiage.

 8              THE JUDGE:  Well, you are directing that any

 9         copies of e-mails and other data be destroyed.  I

10         don't think that is within my purview under the anti-

11         harassment statute.

12              MR. SHAH:  You can strike that, Your Honor, and

13         maybe the first sentence.

14              THE JUDGE:  You also direct not to discuss.  I

15         am not quite sure how that language -- access or view

16         certainly is appropriate.  Take a look at that,

17         please.  I believe that has the key terms that are

18         necessary and permissible under the anti-harassment

19         statute.

20              MR. FOSTER:  Looks good, then.  Thank you.

21              MR. SHAH:  Now, Your Honor, is that going to

22         apply to both?

23              THE JUDGE:  Yes, it will be the same language on

24         each.

25              MR. FOSTER:  Okay.  Good.
```

Bowers v. Kletke                                          , 2/19/2010

1          THE JUDGE:  Any questions on this, Mr. Kletke,

2     Ms. Cohen?

3          MR. SHAH:  No, Your Honor, they will, as I say,

4     there is no issue at all with this.

5          THE JUDGE:  All right.

6          MR. SHAH:  I will have my clients sign both.

7          THE JUDGE:  Ms. Cohen signs that one.

8          MR. SHAH:  This one.  Okay.  Thank you.

9          THE JUDGE:  And this one is Mr. Kletke's, as

10    soon as I get it ready.

11         MR. SHAH:  And the Court is not making any

12    specific findings; is that right, Your Honor?

13         THE JUDGE:  I am finding that it appears to be

14    justified under the anti-harassment statute and I

15    believe it is necessary for the next six months to

16    restrain this activity.  That is my finding.

17         MR. SHAH:  Okay.  Thank you.  That is all I

18    needed to know.

19         THE JUDGE:  As far as the other activity, you

20    both know where the other courts are.

21         MR. SHAH:  Do we have the other order as well?

22         THE JUDGE:  I am, need to make sure I've got

23    exactly the same language on each, and I don't recall

24    exactly what I said here, so.

25         MR. SHAH:  Thank you.

Bowers v. Kletke                                    , 2/19/2010

```
 1              THE JUDGE:  All right.  This will be in effect,

 2         then, for the next six months.  Mr. Kletke and Ms.

 3         Bowers need to sign that one, and hopefully with the

 4         passage of six months of time both parties will have

 5         moved on in other directions, and if other matters are

 6         still pending in other courts, hopefully they will be

 7         close to resolutions.

 8              MR. SHAH:  Thank you, Your Honor.

 9              MR. FOSTER:  Thank you, Your Honor.

10              THE JUDGE:  You are welcome.  Mr. Shah, why

11         don't you and your clients wait a few minutes so we

12         don't have to take the same elevator, it might be more

13         comfortable.

14              MR. SHAH:  Sure.  Thank you, Your Honor.

15                   (END OF PROCEEDINGS.)

16

17

18

19

20

21

22

23

24

25
```

Bowers v. Kletke                                        , 2/19/2010

```
 1                     C E R T I F I C A T E

 2
        STATE OF WASHINGTON )
 3                          )  ss.
        COUNTY OF KING      )
 4

 5           This is to certify that I, Phyllis Craver Lykken,

 6      Certified Court Reporter and Notary Public in and for the

 7      State of Washington, officing at Bellevue, transcribed

 8      the within and foregoing recorded proceedings; said

 9      proceedings being transcribed by me from a CD on the date

10      herein set forth; that said examination was recorded and

11      thereafter under my supervision transcribed, and that

12      same is a full, true and correct record of the testimony

13      of said proceedings, including all questions, answers and

14      objections, if any, of counsel.

15           I further certify that I am not a relative or

16      employee or attorney or counsel of any of the parties,

17      nor am I financially interested in the outcome of the

18      cause.

19           IN WITNESS WHEREOF I have hereunto set my hand and

20      affix my official seal this          day of          ,

21      2   0.

22                        PHYLLIS CRAVER LYKKEN, RPR,

23                        CCR NO. 2423
                          Notary Public in and for the State
24                        of Washington
                          My Commission expires on March 31, 2012
25
```

Central Court Reporting      800-442-DEPO