Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CHRISTIE BOWERS,<br><br>                Plaintiff,<br><br>vs.<br><br>ROBIN KLETKE and ROBIN COHEN, husband and wife and the marital community composed thereof,<br><br>                Defendants. | NO. C08-1768RSM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE AND FOR SANCTIONS**<br><br>NOTED ON MOTION DOCKET: SEPTEMBER 24, 2010<br><br>ORAL ARGUMENT REQUESTED |

### I.   Introduction and Procedural Framework

If the Court grants Ms. Bowers Issue Preclusion Motion, the fact that the defendants accessed and viewed her emails without her authorization will be established in this case. The defendants will no longer be able to present the "*we didn't do it charade"* because they will be precluded from denying these previously litigated and established facts. This will greatly narrow the issues for trial if not permit the reviewing Court to grant Ms. Bowers' Cross Motion for Summary Judgment on the single remaining claim — violation of the Washington State Privacy Act.

## II. Legal Framework

The defense appears to suggest that Rule 37 require mandatory sanctions. "Rule 37 does not provide for mandatory sanctions, and the district court may find that a party's failure to include a witness in the initial Rule 26(a) (1) disclosures was substantially justified or harmless. Rule 37(c)(1)." Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004). Rule 37(c)(1) provides that a party who "without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions." The Advisory Committee Notes to the 1993 amendments, state that the "harmless violation" provision was added to avoid unduly harsh penalties in situations such as the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties...."

In Davis v. Bancorp, the court held that a party's failure to disclose a witness was a harmless error because the other party had notice of the role the witness played and because the disclosing party did not learn of the witnesses' name until after the Initial Disclosure. Davis v. Bancorp, 383 F.3d at 765. Hence, the court held that the district court did not abuse its discretion when it denied the motion to strike. Id. Similarly, in EMI Music Marketing v. Avatar Records, Inc., 334 F.Supp.2d 442 (S.D.N.Y. 2004), the district court allowed the presentation of undisclosed exhibits and witnesses for trial because EMI, the opposing party, was aware of their existence and relevance:

> EMI essentially argues that it will be a victim of unfair surprise if Avatar is permitted to introduce the challenged witnesses and exhibits at trial. But the

> Court concludes that it is appropriate to invoke Rule 37's harmless error provision. Although it may be true that Avatar failed to adhere to the letter of the discovery rules, the Court is convinced that EMI was sufficiently aware of the existence and relevance of the persons and documents in question so that it is not being subjected to trial by ambush, EMI's fifth motion in *limine* is therefore denied.

EMI Music Marketing v. Avatar Records, Inc., 334 F.Supp.2d at 445-446.

### III.    Legal Analysis and Argument

#### A.    The Records from the Anti-Harassment Hearing Were Disclosed and Are Properly Before this Court

Both parties disclosed the records from the anti-harassment hearing in their initial disclosures. Plaintiff's Initial Disclosure lists the Order for Unlawful Harassment and related pleadings from the two Pierce County District Court proceedings.  (Dkt. # 10, pg. 5).  The Defendants' Initial Disclosure "expressly incorporated by reference the witnesses and documents identified by the Plaintiff in her initial disclosures." (Dkt. # 11, pg. 7).  The defense cannot claim unfair surprise or prejudice from the submission of these records or the transcript. (Dkt. # 101-1).  To the extent either party was required to produce the transcript in discovery because they both identified these records in their Initial Disclosures, it is a harmless error because all parties in this case were present at that hearing and are fully informed of these facts and events.

Ms. Bowers has personal knowledge that the evidence presented in the anti-harassment hearing (Dkt. # 104, Exhibits 1 to 10) were filed with the court in that matter and that they were presented to the defendants.  Indeed the transcript from the anti-harassment hearing verifies these facts.  (Dkt. # 100, Exhibit A pg. 4, lines 1-14).   They are attached to Ms. Bowers' declaration to authenticate them as the evidence presented in that matter.

Even if the Court believe there are disclosure or production concern, it should follow Davis v. Bancorp and EMI Music Marketing v. Avatar Records, Inc., and deny the defendants' request to exclude the evidence from the anti-harrassment hearing; they were present at that hearing and had full knowledge of the events and evidence presented.

**B.   The Defendants Waived Objections to the Anti-Harassment Evidence**

The defendants waived all objections to the declarations and documentary evidence presented in the anti-harassment hearing. The failure to object to evidence as it is offered constitutes a waiver of the objections. In Cook v. Von Stein, 97 Wn.App. 701, 706, 985 P.2d 956 (1999), the court stated that "a litigant may waive objections to the error by failing to request timely relief." This same rule is stated in the Ninth Circuit case, Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir.1994) (failure to object at trial waives the right). The defendants cannot now object to the declarations and evidence submitted in the Pierce County District Court anti-harassment hearing (Dkt. # 104).[1] Ms. Bowers submitted these declarations and evidence to opposing counsel and the court without objection from the defendants or their counsel in the anti-harassment hearing. (Dkt. # 100, Ex. Exhibit A, lines 1 to 14). Under Cook and Gasaway, the defendants waived all objections to this evidence, and thus it is properly before this court.

**C.   The Court Should Not Strike the Email Evidence**

The defense asked Plaintiff to produce the 139 emails alleged to have been intercepted and viewed by the defendants referenced in the Complaint (Dkt. # 1; ¶ 3.7).

---

[1] The anti-harassment witnesses testify to the fact that an IP address associated with the defendants' email address is referenced on the exhibits attached to their declarations. This is not expert testimony; it is factual. It takes no special training to look at the email exhibits and see the IP address. Similarly, it takes no special training to review the United Online

Ms. Bowers' current and prior counsel responded that they could not produce these 139 emails because they were unable to tell which emails the defendants viewed. Obviously, Ms. Bowers cannot produce that which she cannot identify.[2] Nevertheless, in an effort to avoid the controversy over the ill-advised words used in the Complaint to describe the defendants' access and viewing of Ms. Bowers' email, Ms. Bowers produced the email that remained on her texdandy@juno.com account as part of a supplemental production on July 9, 2010 (See Dkt. # 107, pg. 5 of 155), well before the August 2, 2010 discovery cutoff date.[3] The defense took no action to attempt to schedule Ms. Bowers' deposition even though there was plenty of time to do so, and they did not raise any objections when this email was presented. The Defense cannot cry foul from their own inaction and the Court should deny their request to exclude this evidence as well as their request for sanctions. Roe v. Nevada, 621 F.Supp.2d 1039, 1060 (D.Nev. 2007) (party cannot claim prejudice caused by their own dilatory conduct; motion to exclude denied).

### D. Ms. Bowers Disclosed SonoSite as a Potential Witness Source; the SonoSite Declarations are Properly Before the Court

There has been a great deal of publicity in this case over the fact that SonoSite, Inc. possessed discoverable and relevant information. First, Plaintiff alleged in her Complaint that SonoSite conducted an independent investigation and wrote to Ms. Bowers' attorney that it concluded that Mr. Kletke had used its computer network to access Ms. Bowers'

---

records and count the number of times these IP addresses appear on this business record, with the associated date, nor does it take any special training to calculate login times.
[2] Defendants complain generally about Ms. Bowers' discovery production, but do not identify specifically what they say is missing. Ms. Bowers cannot respond and asks that this portion of the defendants' motion be denied.
[3] A review of Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment, (Dkt. # 105) pg. 3, shows that these emails

texdandy@juno.com email account (Dkt. # 1, ¶ 3.8 and ¶ 3.9).  In their Answer, the defendants admitted that they were aware of this letter (Dkt. # 7, ¶ 3.9), which Ms. Bowers presented to the defendants and the Court in early February 2010.  (Dkt. # 51-2).  The letter in question is signed by Ms. Kathryn Surance-Smith, Vice President, General Counsel and Corporate Secretary of SonoSite, Inc., states:

> "SonoSite has concluded its investigation and has confirmed that Mr. Robin Kletke, an independent contractor engaged by SonoSite, accessed your client's personal email account from the company's servers on several occasions. This was obviously outside Mr. Kletke's scope of engagement by SonoSite. We have taken steps to ensure that Mr. Kletke no longer has internet access while performing services for SonoSite."

(Dkt. # 51-2, pg. 2 o f 11, **filed on 02/08/2010**).  Also attached to counsel's declaration at that time was a Notice of 30(b)(6) Subpoena to SonoSite (Dkt. # 51-4, **also filed on 02/08/2010**).

Furthermore, Plaintiff's Initial Disclosure identified Scott Sanberg of SonoSite as a witness who "notified [her] that Robin Kletke was secretly logging onto Plaintiff's email account from SonoSite's computers" and Kathryn Surance-Smith from SonoSite as having "knowledge of internal investigation at SonoSite finding that Robin Kletke secretly logged onto Plaintiff's email account from SonoSite computers on several occasions."  (Dkt. # 10, pg. 2).  In Plaintiff's Responses and Answers to Defendants' First Set of Interrogatories and Requests for Production of Documents, Ms. Bowers identified "SonoSite" as a witness with information regarding the allegations in her Complaint.  (See Dkt. # 113, pgs. 15-34).  This discovery response also included references to SonoSite confirming that Mr. Kletke

---

are properly supported by Ms. Bowers' declaration.  Similarly, pg. 33 of Dkt. # 113 is signed by both Ms. Bowers and her previous counsel.

was accessing Ms. Bowers' email from the SonoSite computer network. (Dkt. # 113, pg. pg. 20, lines 1-2; pg. 21, 11-12; pg. 22, line 23 to pg. 24, line 5).

When the parties filed their Second Joint Status Report on March 29, 2010, the defendants referenced the records SonoSite produced in response to the February 25, 2009 subpoena: "SonoSite delivered documents to plaintiff. Included in the documents were technical logs, time sheets, invoices, and other requested documents. Sonosite also sent a letter indicating that they believed Mr. Kletke had accessed Ms. Bowers' Juno.com account." (Dkt. # 77, pg. 3, lines 12-18). These documents are attached to the SonoSite declarations and it is clear that the defendants have them. On page 6 of the March 29th Second Joint Status Report, Ms. Bowers stated that "[e]vidence available from SonoSite, Inc., confirms that Robin Kletke accessed the Plaintiff's www.juno.com email account on more than one occasion." (Dkt. # 77, pg. 6 lines 23-24). It has been highly publicized in this case that SonoSite had information relevant to Ms. Bowers' claims. The defense cannot claim unfair surprise or prejudice. They have long known that these facts were available from SonoSite.

The SonoSite witnesses offer **factual** testimony of the facts and events that led the company to conclude that Mr. Kletke had used the SonoSite computer network to access Ms. Bowers' texdandy@juno.com email account. Mr. Kletke has been aware of this investigation and conclusion since the February of 2008 SonoSite meeting he attended where he admitted accessing Ms. Bowers' texdandy@juno.com email account from SonoSite's network.[4] (See Dkt. # 102, ¶ 7, ¶ 11). In fact, Mr. Kletke has been on notice of

---

[4] Ms. Bowers was not aware of Ms. Ausmus, Ms. Koreis or Mr. Rossouw when her Initial Disclosure was filed; however, Mr. Kletke was certainly aware of Ms. Koreis' role in this

these facts prior to this meeting because he was secretly using SonoSite's computer network for this purpose.[5]  Ms. Cohen has been on notice of the investigation and its conclusion since as early as December 10, 2008, the date her prior counsel entered his Notice of Appearance in this case.  (Dkt. # 2).

The tactic employed by Mr. Kletke and Ms. Cohen here, the defendants in this case, are similar to the tactic the defendants attempted in Roe v. Nevada, 621 F.Supp.2d 1039 (D.Nev. 2007). In Roe v. Nevada, the defendants moved to strike witnesses that were not disclosed until the last day of discovery.  Roe v. Nevada, 621 F. Supp. 2d at 1060.  The court denied the motion to exclude the witnesses because the defendants did not attempt to open discovery.  Id.  Rejecting the motion to exclude, the Roe v. Nevada court explained, "Defendants, until now, gave no indication of their desire to depose these witnesses, and therefore any prejudice is caused by Defendants' own dilatory conduct."  Id.

Plaintiff elected to not take a 30(b)(6) deposition of SonoSite to preserve limited cash resources, opting instead to obtain the declarations.  Ms. Bowers did not prohibit or interfere with the defendants' attempts to conduct discovery from SonoSite.  The defendants could have taken their own 30(b)(6) deposition of SonoSite, or they could have contacted SonoSite and conducted informal discovery or requested declarations just like Ms. Bowers' counsel did.  There is no way the defendants can legitimately claim unfair surprise and they cannot cry foul on these facts.  This Court should follow Roe v. Nevada

---

investigation because they attended the same meeting where Mr. Kletke made the admission.

[5] The defendants did not list any SonoSite witnesses in their disclosure despite having knowledge of these facts; therefore they have unclean hands to object to these witnesses for their clear violation of FRCP 26(e).

and deny the defendants' motion to strike the SonSite declarations as well as the defendants' request for sanctions.

### E. The SonoSite Witnesses Can Be Used for Impeachment

Defendants' Motion for Summary Judgment is, in essence, a denial of the allegations. Indeed, the defendants denied that Mr. Kletke use SonoSite's computer system to access Ms. Bowers' texdandy@juno.com email account. (Dkt. # 7, ¶ 3.8 and ¶ 3.9; the defendants brazenly claimed in their Answer a lack of knowledge and information of these facts. (See Id.). We know now from the SonoSite witnesses and Mr. Kletke's admission by a party opponent under Fed. R. Evid. 801(d)(2), that this denial is wholly unfounded, and actually, contrary to the evidence. Hence, the SonoSite witnesses impeach these false denials. Furthermore, Rule 26(a)(1)(A) allows Ms. Bowers to use undisclosed witnesses for impeachment purposes (not that Ms. Bowers concedes that she did not disclose SonoSite as a possible witnesses).

### F. The Hearsay Objections are Unfounded

The defendants object to the statements of their counsel during the anti-harassment hearing and the statement of Mr. Kletke's admission in the Kories Declaration. The admission to plaintiff's counsel by Mr. Shaw, the defendants' authorized speaking agent, and Mr. Kletke's admission to SonoSite, are not hearsay; they are admissions by a party opponent and are properly before the Court. Fed. R. Evid. 801(d)(2).

### G. Plaintiff Does Not Offer Expert Testimony

Plaintiff's witnesses do not offer expert testimony. (See *infra* note 1). With respect to the SonoSite witnesses, they simply explain their business records and their actions, events and observations that led to the company's conclusion, admitted by Mr. Kletke, that

he used the SonoSite computer system to access Ms. Bowers' texdandy@juno.com email account. Mr. Rossouw also verifies the fact that IP address "206.169.230.3" belonged to SonoSite's firewall and would be recorded on a recipient's server with that same IP address. (Dkt. # 103; Rossouw Decl. ¶¶ 11-13). Mr. Lihn states that his logon report accurately lists the IP addresses that logged onto Ms. Bowers' texdandy@juno.com email account. (Dkt. # 104-7, Lihn Decl. ¶¶ 1-3). The declarations from the anti-harassment hearing simply present the fact that IP addresses associated with the defendants appear on emails from the defendants. (Dkt. # 104-2 to Dkt. # 104-5). The charts offered by Ms. Bowers (Dkt. # 106; Exhibit A) simply list and count the number of times IP addresses associated with the defendants appear on United Online's business records and SonoSite's business records. One chart also calculates the duration of the some of the logon times. (Dkt. # 104-16). The charts are offered to help the Court (and the defendants) review Ms. Bowers' proof. None of this is expert testimony; it is all factual and it takes no special skill or knowledge to know and testify to these facts.

The summary Ms. Bowers provides about how she uses computer devices and the Internet to access and read her texdandy@juno.com private email communications is not expert testimony. This is a factual summary of how it is done, and this is a factual summary of how the millions of people who use webmail and computer devices to complete this routine task. Plaintiff's request for judicial notice is proper because these facts are not subject to reasonable dispute and generally known in this jurisdiction. Fed. Rule Evid. 201. Further, it takes no special training or skill to know these facts and, again, is not expert testimony.

### H.  There Is No Failure to Disclose Evidence of Damages

The defense argues that Ms. Bowers did not identify emotional distress damages. This is incorrect. In her September 2009 responses to defendants' written discovery, Ms. Bowers unambiguously states that she has mental distress damages and lists individuals with knowledge of this injury. "[list of witnesses] are aware of my mental distress ... " (See Exhibit A to Dkt. # 113, pg. 5, lines 9-12). In addition, during the anti-harassment hearing, counsel for Ms. Bowers stated:

> MR. FOSTER:  Your Honor, in response, just a couple of points.  The first is on the harassment side.  This behavior is akin to the respondents going in my client's underwear drawer and not only going through the underwear, but taking it out and showing it to other people and really causing my client a great deal of emotional harm, a great deal of emotional distress.  (Exhibit A to Walters Decl., pgs 7-8).

Both parties identified records from the anti-harassment hearing in the Initial Disclosures. Plaintiff did so on page 5 of Plaintiff's Initial Disclosure (Dkt. # 10), and defendants did so via an express incorporation by reference in their Initial Disclosures: "Defendants expressly incorporate by reference the witnesses and documents identified by Plaintiff in her initial disclosures." (See Dkt. # 11, pg. 7).  Therefore, it cannot be said that Ms. Bowers did not identify emotional distress damages in this case.

The defendants appear to take the position that a party cannot expand on the words used to describe a claim in Initial Disclosures or written discovery responses.  This is not the way it is done. Parties use depositions to flesh out the details and deponents routinely provide more details on claims than provided in written discovery responses.  Had the defendants taken Ms. Bowers' deposition they could have learned more about her emotional distress injury.   They elected not to depose Ms. Bowers (and SonoSite) and should not now be able to claim prejudice by their own inaction,

### IV. Conclusion

The defendants' motion should be denied entirely. The defendants' attempt to exclude the records from the anti-harassment hearing should fail because these records were disclosed by both parties, because they waived all objections, and because the defendants have had full knowledge of these facts since they were both present at the anti-harassment hearing. The defendants' attempt to exclude the SonoSite witnesses should also fail because SonoSite was repeatedly disclosed as a potential evidence source in this case and because the defendants have known about these facts since as early as February of 2008 for Mr. Kletke, and December 10, 2008 for Ms. Cohen (See Dkt. # 2). The last discovery cut off date was August 2, 2010, and yet the defendants did not conduct discovery from SonoSite. The defendants request to exclude the email evidence should be denied because the defendants took no steps to conduct a deposition even though they were disclosed with plenty of time to do so.

Rule 37 sanctions are only appropriate "where a party displays wilfulness, bad faith, or fault. <u>Langley by Langley v. Union Elec. Co.</u>, 107 F.3d 510, 514 (7th Cir.1997). No willfulness, bad faith or fault can be attributed to Ms. Bowers here. At not time did Ms. Bowers attempt to hide the ball. The defendants' repeated requests for sanctions should be denied.

Dated this 20th day of September 2010.

WALTERS LAW FIRM PLLC

_____
Mark Walters, WSBA 25537
Attorney for Plaintiff, Christie Bowers
WALTERS LAW FIRM PLLC
1411 Fourth Avenue, Suite 75
Seattle, WA 98101
Phone: 425.688.7620

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of September, 2010, I electronically filed the documents listed below with the Clerk of the Court using the CM/EFC system which will send notification of such filing to the following:

*Pro Se* **Defendant**

Robin Kletke
16820 226th Ave NE
Woodinville, WA 98077
206-718-1237
robinkletke@hotmail.com
r2agility@verizon.net

*Pro Se* **Defendant**

Robin Cohen
16820 226th Ave NE
Woodinville, WA 98077
206-718-1237
robinkletke@hotmail.com
r2agility@verizon.net

**Counsel for Plaintiff**

Gregory Cavagnaro, WSBA  17644
Law Offices of Gregory Cavagnaro
1400 112th Avenue SE #100
Bellevue, WA 98004
greg@gcavlaw.com
Counsel for Plaintiff

**Documents Filed**

1. Plaintiff's Opposition to Defendants' Motion to Strike and for Sanctions

And I hereby certify that I have mailed by United States Postal Service the document to the following non CM/EFC participants: **Not applicable.**

Dated: September 20, 2010

_____
Mark Walters